1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10  DE'VERICK LOCKETT,

11          Petitioner,              No. 2:12-cv-0845-KJM-EFB P

12      vs.

13  TIM VIRGA,

14          Respondent.              <u>FINDINGS AND RECOMMENDATIONS</u>

15  _____/

16      Petitioner is a state prisoner without counsel proceeding with an application for a writ of

17  habeas corpus pursuant to 28 U.S.C. § 2254.  He challenges a 2009 judgment of conviction

18  entered against him in the Sacramento County Superior Court on charges of kidnap with intent to

19  commit rape, rape, assault by means of force likely to produce great bodily injury, and battery.

20  He seeks relief on the grounds that his constitutional rights were violated by the prosecutor's

21  improper use of peremptory challenges to exclude four African Americans from the jury.  Upon

22  careful consideration of the record and the applicable law, and for the following reasons, it is

23  recommended that petitioner's application for habeas corpus relief be denied.

24  /////

25  /////

26  /////

1

## I.   Background[1]

Following a 12-day jury trial, defendant Deverick Lockett was convicted of two counts of kidnapping to commit rape (Pen.Code, § 209, subd. (b)(1)),[2] and single counts of rape (§ 261, subd. (a)(1)), assault with intent to commit rape (§ 220), attempted rape (§§ 664, 261, subd. (a)(2)), assault by means of force likely to produce great bodily injury (§ 245, subd. (a)(1)), and misdemeanor battery (§ 242), along with allegations that defendant kidnapped the rape victim (§ 667.61, subd. (d)(2)), moved her in a manner that substantially increased the risk of harm (§ 667.61, subd. (e)(1)), and inflicted great bodily injury (§§ 667.61, former subd. (e)(3), 12022.7, 12022.8).  The trial court sustained a prior strike allegation (§§ 667, subds. (b)-(I), 1170.12) and sentenced defendant to a state prison term of 30 years plus 64 years to life.

On appeal, defendant contends the trial court erred in finding no prima facie case of racial discrimination in the prosecutor's exercise of peremptory challenges, and his conviction for attempted rape should be stricken as a lesser included offense of assault with intent to commit rape.  Only this second contention has merit.  We shall modify the judgment accordingly and, in all other respects, affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

### Cassie Doe

In the early morning hours of September 20, 2007, Cassie "Doe" was heading home when she stopped at a gas station to get cigarettes and use the restroom.  She waved to the clerk as she left the station's store.  She next remembered waking up in the hospital in pain.

Twenty minutes after Cassie left the store, a passer-by told the clerk about noises coming from the dumpster.  The clerk went to investigate and heard someone crying.  He opened the door to the dumpster area and saw Cassie standing between two trash containers, naked from the waist down, beaten and bloody, and covering herself with some cardboard.

At first Cassie could not remember what happened, but later said she might have been sexually assaulted.  A sexual assault examination revealed numerous abrasions and bruises, including

---

[1]  In its unpublished memorandum and opinion affirming petitioner's judgment of conviction on appeal, the California Court of Appeal for the Third Appellate District provided the following factual summary.

[2]  Undesignated statutory references are to the Penal Code.

genital injuries.  She suffered six fractures to her face, leaving her with permanent injuries.  Defendant's DNA matched spermatozoa collected from Cassie.

**Cydney Doe**

On September 23, 2007, Cydney "Doe" noticed defendant walking towards her as she entered her Carmichael apartment complex.  As Cydney went to the dumpster, defendant came from behind and repeatedly punched her in the head.  As she was losing consciousness, Cydney began to scream.  Defendant overpowered and dragged Cydney about 25 feet towards the laundry room by her arm and torso.  He put her face down on her stomach on the back floor of the laundry room and said he would really hurt her if she made any more noise, as he unbuttoned the top button of her jeans. A neighbor who heard the screams saw defendant drag Cydney into the laundry room.  The neighbor's girlfriend then called 911.

James M., also a resident of the complex, saw defendant carrying Cydney by the waist, with his hand on her throat.  James found defendant in the laundry room, straddling Cydney and tugging on her pants.  James yelled out; defendant stood up and walked towards James, with his fists clenched and breathing heavily.  As James backed out of the doorway, defendant punched him in the head, causing him to fall backwards into a bush outside the laundry room.  Defendant fled and James pursued him but was unsuccessful after defendant hopped a six-foot, wrought-iron fence.  James returned to assist Cydney.

Cydney was transported by ambulance to the UC Davis Medical Center.  She had suffered a head wound requiring 50 stitches, along with several bruises and abrasions.

Police located defendant standing on a nearby corner and arrested him on a parole violation.  Cydney later identified defendant as her attacker at a live lineup at the jail.

**Stipulated Priors**

The People presented evidence of two prior uncharged crimes and the parties stipulated to the facts.

In December 1996, defendant, carrying a knife, entered Denise "Doe's" home while she slept in her second-story bedroom.  The sound awakened her and she found defendant at the foot of her bed.  He yelled at her to "shut up" and then jumped on the bed, pinned her down, and tried to stab Denise as she struggled. Defendant told Denise to take off her nightgown; he agreed to let her up to disrobe.  Denise got up, pushed defendant, and jumped from the top stairs to the landing, smashing her face on the

hardwood floor.  As she ran outside, Denise heard defendant laughing as he walked down the stairs.  On March 4, 1997, a charge of assault with intent to commit rape was found true by the juvenile court and defendant was committed to the former California Youth Authority (CYA).

In December 2003, defendant sexually assaulted a juvenile at the CYA in Stockton.  On August 16, 2004, he pleaded guilty to sexual battery.

Resp't's Lodg. Doc. 5 at 1-5 (hereinafter Opinion).

On July 25, 2011, petitioner filed a petition for review in the California Supreme Court.

Resp't's Lodg. Doc. 6.  That petition was summarily denied by order dated August 31, 2011.

Resp't's Lodg. Doc. 7.

Petitioner filed his federal petition for writ of habeas corpus in this court on April 2, 2012.  Respondent filed an answer on July 5, 2012.

## II.    Analysis

### A.  Standards for a Writ of Habeas Corpus

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States.  28 U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation or application of state law.  *See Wilson v. Corcoran*, 562 U.S.___, ___, 131 S. Ct. 13, 16 (2010); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Park v. California*, 202 F.3d 1146, 1149 (9th Cir. 2000).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the state court decision. *Stanley v. Cullen*, 633 F.3d 852, 859 (9th Cir. 2011) (*citing Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). Nonetheless, "circuit court precedent may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably." *Stanley*, 633 F.3d at 859 (quoting *Maxwell v. Roe*, 606 F.3d 561, 567 (9th Cir. 2010)).

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. *Price v. Vincent*, 538 U.S. 634, 640 (2003). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.[3] *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Williams*, 529 U.S. at 413; *Chia v. Cambra*, 360 F.3d 997, 1002 (9th Cir. 2004). In this regard, a federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 412. *See also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *Lockyer*, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'"). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness

---

[3] Under § 2254(d)(2), a state court decision based on a factual determination is not to be overturned on factual grounds unless it is "objectively unreasonable in light of the evidence presented in the state court proceeding." *Stanley*, 633 F.3d at 859 (quoting *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004)).

of the state court's decision." *Harrington v. Richter*, 562 U.S.___,___,131 S. Ct. 770, 786

(2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  Accordingly, "[a]s a

condition for obtaining habeas corpus from a federal court, a state prisoner must show that the

state court's ruling on the claim being presented in federal court was so lacking in justification

that there was an error well understood and comprehended in existing law beyond any possibility

for fairminded disagreement." *Richter*,131 S. Ct. at 786-87.

If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing

court must conduct a de novo review of a habeas petitioner's claims. *Delgadillo v. Woodford*,

527 F.3d 919, 925 (9th Cir. 2008); *see also Frantz v. Hazey*, 533 F.3d 724, 735 (9th Cir. 2008)

(en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of §

2254(d)(1) error and that, if there is such error, we must decide the habeas petition by

considering de novo the constitutional issues raised.").

The court looks to the last reasoned state court decision as the basis for the state court

judgment.  *Stanley*, 633 F.3d at 859; *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004).

If the last reasoned state court decision adopts or substantially incorporates the reasoning from a

previous state court decision, this court may consider both decisions to ascertain the reasoning of

the last decision.  *Edwards v. Lamarque*, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc).  "When

a federal claim has been presented to a state court and the state court has denied relief, it may be

presumed that the state court adjudicated the claim on the merits in the absence of any indication

or state-law procedural principles to the contrary."  *Richter*, 131 S. Ct. at 784-85.  This

presumption may be overcome by a showing "there is reason to think some other explanation for

the state court's decision is more likely."  *Id*. at 785 (citing *Ylst v. Nunnemaker*, 501 U.S. 797,

803 (1991)).  Similarly, when a state court decision on a petitioner's claims rejects some claims

but does not expressly address a federal claim, a federal habeas court must presume, subject to

rebuttal, that the federal claim was adjudicated on the merits. *Johnson v. Williams*, ___, U.S.

___, ___, 133 S.Ct. 1088, 1091 (2013).

Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d).  *Stanley*, 633 F.3d at 860; *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003).   "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable."  *Himes*, 336 F.3d at 853.  Where no reasoned decision is available, the habeas petitioner still has the burden of "showing there was no reasonable basis for the state court to deny relief."  *Richter*, 131 S. Ct. at 784.

When it is clear, however, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo.  *Stanley*, 633 F.3d at 860; *Reynoso v. Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006); *Nulph v. Cook,* 333 F.3d 1052, 1056 (9th Cir. 2003).

**B.  Petitioner's Claim**

Although the federal habeas form filed by petitioner in this court does not articulate any claims for relief, petitioner has attached his petition for review filed in the California Supreme Court.  It appears from that document that petitioner is claiming in this court that his constitutional rights were violated by the prosecutor's improper use of peremptory challenges to exclude four African Americans from the jury (*Batson* claim).

The California Court of Appeal fairly described the background to petitioner's *Batson,* claim as follows:

> Defendant's claim involves the prosecution's peremptory challenges against four African-American prospective jurors: N.S., N .R., T.H., and K.B.
>
> Before working for Kaiser as a registered nurse, N.S. worked in Sacramento County Juvenile Hall and Alameda County Juvenile Hall, where she dealt with sexual assault victims as well as those accused of sexual assault.  N.S. was sexually assaulted when she was four years old, but did not recall the details of the incident. She had a previous conviction for disturbing the peace.  The court treated her fairly in her case, but the police officer did not,

7

although this would not affect her ability to serve on a jury.  In 1996, her former boyfriend was arrested for burglary with a gun and was serving a life term under a three strikes sentence.

N.R. worked events at Arco Arena.  Asked if the questions to other prospective jurors caused her to question her ability to be fair, N.R. said, "Yeah.  I think I will be fair because I had to hear everything."  After indicating she understood the People's burden of proof, N.R. hesitated, stating, "It is tough because it is a horrible crime," and agreeing defendant would not be in court if he was not guilty.  N.R. guessed she would hear everything first and then give her opinion.  Her sister was sexually assaulted by their foster father but "he got away with it" because the laboratory lost the evidence.  This made N.R. mad, but she would "push it to the side" and be a fair juror.

T.H. was a personal banker for Wells Fargo.  She did not know anyone who was a victim of or had been convicted of a crime similar to those in this case.  Asked by defense counsel about her understanding of defendant's right not to testify, T.H. replied, "[T]here could be several avenues.  If you have someone representing you and you trust them – if I am going to court for a divorce or what have you, I am paying someone to be my mouthpiece, based on what I told you happened and the evidence, or whatever."  Since some people "think they know what to say but do not have the proper effect," T.H. said, "[t]hat is why you have a professional to help you along with the process."  When the prosecutor asked if she understood defendant's silence was not evidence, T.H. said, "I might not answer the way that you might think I should have, but the judge said listen to the evidence.  I can't listen to what he don't [ sic ] say or what he did or didn't say.  I am going to listen to what you present."

K.B. was a supervisor at a window company.  Thirteen years ago, he stopped at a light rail parking lot while talking to some women, and was arrested for driving without a license and carrying an unlicensed gun.  He served a two-week jail term for the gun offense.  K.B. felt he was treated fairly by the courts, but the sheriff who arrested him treated him unfairly by claiming he fought the two women.  He said there was no fight, which was just an excuse used by law enforcement to stop and see what was going on.  The incident would not affect his ability to serve as a juror.

N.S. (the nurse) was on the panel of prospective jurors when the defense and the prosecution each exercised two peremptory challenges.  N.R. (the events worker) and T.H. (the banker) were then called into the jury box for voir dire.  After both parties passed for cause, the prosecutor exercised a peremptory challenge on N.S. After the defense exercised a peremptory challenge, the prosecutor followed by excusing N.R.  The prosecution and defense then each exercised five more peremptory challenges, and

8

K.B. (the window company supervisor) was called to the jury box for voir dire.  The defense and prosecution passed for cause on the panel, and the defense passed on the next peremptory challenge.  The prosecutor exercised a peremptory challenge on T.H., followed by defense counsel excusing a prospective juror, and the prosecutor exercising a peremptory challenge on K.B.  After an unreported sidebar, defense counsel exercised a peremptory challenge, and the prosecutor accepted the panel.  Defense counsel then exercised another peremptory challenge, seven more prospective jurors were called, and the trial court called a recess.

During the recess, defense counsel indicated her intention to file a *Batson-Wheeler* motion.[4]  Counsel alleged a "pattern of the prosecution dismissing potential jurors based on their apparent African-American lineage," believing there was no "race-neutral reason" for dismissing N.S., N.R., T.H., and K.B., which established a prima facie case of discriminatory peremptory challenges.

The trial court said it had "been following this pretty closely," and did not believe defendant had made a prima facie case.  The court noted two African-American jurors were on the panel just passed by the prosecutor.  Continuing, the trial court declared that it identified race-neutral reasons for each of the contested peremptory challenges.  After indicating the prosecutor would be allowed to give his reasons for the challenges, the trial court gave what it saw as race-neutral reasons for the contested peremptory challenges.

Regarding N.R., the trial court found "her responses to the questions indicated what I would just have to say was a lack of intelligence.  She seemed to have difficulty appreciating the concepts that she had to be questioned about" and "was easily confused by the kinds of questions we were asking her."

The trial court said K.B. "had a negative experience with law enforcement, the result of a misdemeanor for unlawful possession of a gun."  Also, the trial court "was not completely satisfied with the credibility of his response in connection with why he was arrested in the first place."

T.H. was characterized by the trial court as "an intelligent woman" with "an executive kind of personality."  The trial court found that her answers, particularly in regard to defense counsel's questions, "indicated that she was perhaps more sympathetic to the defense side of the case."  T.H.'s answers suggested she would use attorney argument as a "substitute for evidence" if defendant did not testify,

---

[4]  *Batson v. Kentucky* (1986) 476 U.S. 79 [90 L.Ed.2d 69] (*Batson*); *People v. Wheeler* (1978) 22 Cal.3d 258.

1        which the trial court felt was more concerning to the prosecution
     and a valid reason for the peremptory challenge.

2

3        The trial court did not have its notes regarding N.S., but recalled
     she was "somewhat problematic."  The prosecutor interjected that
     N.S. "was a victim of a molest," and "a defendant in a [section]

4        415."  The trial court agreed, recalling it was troubled by her prior
     molestation but even more concerned "that she had been charged

5        in a misdemeanor disturbing the peace incident," which "would
     have provided an adequate basis for the peremptory challenge."

6

7        Asked to provide additional argument, the prosecutor said T.H.'s
     response to his question about defendant "seemed to infer that I
     was trying to belittle her" or make her sound unintelligent, thus

8        offending her.  The prosecutor also agreed that T.H.'s decision to
     treat attorney argument as evidence if defendant did not testify was

9        an additional reason for the peremptory challenge.

10       The trial court told the prosecutor there appeared to be no
     race-neutral reasons for challenging the two African-American

11       jurors who remained on the panel.  Defense counsel said she
     disagreed with some of the court's opinions but understood the

12       ruling.

13  Opinion at 5-10.

14       On direct appeal, petitioner claimed that the trial court applied the wrong legal standard

15  in finding he had not established a prima facie case of discrimination.  Resp't's Lodg. Doc. 1 at

16  18.  Specifically, he contended that the trial judge used the "strong likelihood" test, which has

17  been disapproved by the United States Supreme Court, to determine whether the circumstances

18  demonstrated an inference of discrimination.  *Id.* at 20-22.  Petitioner argued that the overall

19  circumstances of the jury selection, including the fact that the prosecutor used four of his first

20  eleven peremptory challenges to excuse four of the six minority jurors on the panel, clearly

21  showed an inference that the prosecutor's strike of the four African American jurors was

22  motived by race.  *Id.* at 31-32.

23       Petitioner also faulted the trial court for articulating its own reasons why the four African

24  American jurors could be stricken instead of allowing the prosecutor to state his reasons.  He

25  argued that the trial court improperly substituted its own impressions of the challenged jurors for

26  those of the prosecutor, thereby "laying before the People a blue print of acceptable reasons why

the People might have excused those minority jurors." *Id.* at 26. Petitioner argued, "it was not for the trial court to speculate whether the prosecutor had a valid reason for the challenge or not." *Id.* at 33. Petitioner claimed that the trial court's errors in this regard violated his federal constitutional rights and required reversal of his conviction without a showing of prejudice. *Id.* at 34-35.

The California Court of Appeal found that the trial court erred in failing to find a prima facie case of racial discrimination, and in supplying its own reasons to justify the prosecutor's challenge of the four African American jurors. However, the court held that the error was harmless because the overall record of jury voir dire demonstrated race-neutral reasons for excluding these four jurors. The appellate court explained its reasoning as follows:

> **B. Analysis**
>
> "A prosecutor's use of peremptory challenges to strike prospective jurors on the basis of group bias – that is, bias against 'members of an identifiable group distinguished on racial, religious, ethnic, or similar grounds' – violates the right of a criminal defendant to trial by a jury drawn from a representative cross-section of the community under article I, section 16 of the California Constitution," and "also violates the defendant's right to equal protection under the Fourteenth Amendment to the United States Constitution." (*People v. Avila* (2006) 38 Cal.4th 491, 541.)
>
> The United States Supreme Court reaffirmed the three-prong *Batson* test to be used by trial courts when motions are made challenging peremptory strikes: "First, the defendant must make out a prima facie case 'by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose.' [Citations.] Second, once the defendant has made out a prima facie case, the 'burden shifts to the State to explain adequately the racial exclusion' by offering permissible race-neutral justifications for the strikes. [Citations.] Third, '[i]f a race-neutral explanation is tendered, the trial court must then decide . . . whether the opponent of the strike has proved purposeful racial discrimination.'" (*Johnson v. California* (2005) 545 U.S. 162, 168 [162 L.Ed.2d 129, 138] (*Johnson*), fn. omitted.)
>
> Defendant asserts the trial court applied the incorrect legal standard in finding he had not established a prima facie case of discrimination. Asserting defense "counsel can only know what can be observed, i.e., the racial composition of the jury panel, the

race of his own client, and the manner in which a prosecutor exercises his peremptory challenges," defendant claims trial counsel established a prima facie case of discrimination by showing the prosecutor used four of its first 11 peremptory challenges to excuse four of the six African-American venire members.

Defendant takes issue with the trial court providing its own race-neutral reasons for the contested peremptory challenges. Citing *Johnson, supra*, 545 U.S. at page 172 [162 L.Ed.2d at pp. 140–141], he contends this is the exclusive province of the prosecutor, and the trial court should refrain from speculating as to why the jurors in question were challenged.

"The Batson framework is designed to produce actual answers to suspicions and inferences that discrimination may have infected the jury selection process. [Citation.]  The inherent uncertainty present in inquiries of discriminatory purpose counsels against engaging in needless and imperfect speculation when a direct answer can be obtained by asking a simple question." (*Johnson, supra*, 545 U.S. at p. 172 [162 L.Ed.2d at pp. 140–141].)

The trial court short-circuited the procedure established by *Batson* and *Johnson*.  Defendant presented a prima facie case of discrimination – four of the prosecutor's first 11 peremptory challenges were against four of the six AfricanAmericans on the panel.  At this point, the trial court should have asked the prosecutor to give race-neutral reasons for the challenges in question.  The trial court instead bypassed *Batson*'s second step, giving its own views on the challenges before the prosecutor had a chance to explain.

The trial court's error does not warrant reversal.  "'When a trial court denies a *Wheeler* motion without finding a prima facie case of group bias, the appellate court reviews the record of voir dire for evidence to support the trial court's ruling.  [Citations.]  We will affirm the ruling where the record suggests grounds upon which the prosecutor might reasonably have challenged the jurors in question.'"  (*People v. Guerra* (2006) 37 Cal.4th 1067, 1101, *disapproved on another point* in *People v. Rundle* (2008) 43 Cal.4th 76, 151, itself *disapproved on a different ground* in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22.)

The trial court's ruling provided race-neutral reasons for the peremptory challenges as to three of the potential jurors.  Asked to comment, the prosecutor explicitly agreed with the reasons given for one of the venire members, T.H., gave race-neutral reasons for excluding the fourth venire member, N.S., gave an additional race-neutral reason for challenging T.H., and implicitly ratified the reasons given with regard to the other two venire members.  Those reasons are supported by substantial evidence.

1    Applying *Guerra*, we conclude reversal is not warranted because
     the record establishes race-neutral reasons for all of the challenges
2    in question, and the prosecutor provided race-neutral reasons for
     two of the challenges.

3
     Our holding does not contradict the rule that *Batson* error is
4    reversible per se.  (*See Batson, supra*, 476 U.S. at p. 100 [90
     L.Ed.2d at p. 90].)  Although allowing discriminatory peremptory
5    challenges is not subject to harmless error, procedural errors under
     *Batson* can be harmless if the evidence establishes beyond a
6    reasonable doubt that the jurors were excluded for race-neutral
     reasons.  (*See People v. Ayala* (2000) 24 Cal.4th 243, 264
7    [applying harmless error to ex parte hearing allowing prosecutor to
     give reasons for challenges].)  The trial court did not commit
8    substantive *Batson* error, as the record established there were
     race-neutral reasons for the allegedly discriminatory challenges.
9    The trial court's procedural error is harmless because the record
     establishes beyond a reasonable doubt that the challenges in
10   question did not violate *Batson*.

11   Opinion at 5-14.

12          In his petition for review filed in the California Supreme Court, which is attached to

13   petitioner's federal habeas form, petitioner raised a narrower claim than the one he raised in the

14   Court of Appeal.  Specifically, he claimed that the California Court of Appeal should have

15   reversed his conviction "per se" after finding errors by the trial court in its handling of the

16   *Batson* motion, instead of engaging in harmless error review.  Resp't's Lodg. Doc. 6 at 2.

17   Petitioner framed his "sole issue" as follows: "what is the standard of reversal for acknowledged

18   *Batson* error?"  *Id.* at 4.

19          After a review of petitioner's filings in state court, it appears that in this court petitioner

20   seeks to challenge the prosecutor's strike of the four African American jurors from the jury pool.

21   Accordingly, the court will address that claim in these findings and recommendations.

22          **1.  <u>Legal Standards Regarding Petitioner's Batson Claim</u>**

23          Purposeful discrimination on the basis of race or gender in the exercise of peremptory

24   challenges violates the Equal Protection Clause of the United States Constitution.  *See Batson*,

25   476 U.S. at 79; *Johnson*, 545 U.S. at 62.  So-called *Batson* claims are evaluated pursuant to a

26   three-step test:

First, the movant must make a prima facie showing that the prosecution has engaged in the discriminatory use of a peremptory challenge by demonstrating that the circumstances raise "an inference that the prosecutor used [the challenge] to exclude veniremen from the petit jury on account of their race." [Citation omitted.] Second, if the trial court determines a prima facie case has been established, the burden shifts to the prosecution to articulate a [gender]-neutral explanation for challenging the juror in question. [Citation omitted.] Third, if the prosecution provides such an explanation, the trial court must then rule whether the movant has carried his or her burden of proving the existence of purposeful discrimination.

*Tolbert v. Page*, 182 F.3d 677, 680 (9th Cir. 1999) (en banc).

In order to establish a prima facie case of racial discrimination, petitioner must show that "(1) the prospective juror is a member of a "cognizable racial group," (2) the prosecutor used a peremptory strike to remove the juror, and (3) the totality of the circumstances raises an inference that the strike was motived by race." *Boyd v. Newland*, 467 F.3d 1139, 1143 (9th Cir. 2006) (citing *Batson*, 476 U.S. at 96 and *Cooperwood v. Cambra*, 245 F.3d 1042, 1045-46 (9th Cir. 2001)). A prima facie case of discrimination "can be made out by offering a wide variety of evidence, so long as the sum of the proffered facts gives 'rise to an inference of discriminatory purpose.'" *Johnson*, 545 U.S. at 169 (quoting *Batson*, 476 U.S. at 94.)

At the second step of the *Batson* analysis, "the issue is the facial validity of the prosecutor's explanation." *Hernandez v. New York*, 500 U.S. 352, 360 (1991). "A neutral explanation in the context of our analysis here means an explanation based on something other than the race of the juror." *Id.* at 360. "Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race-neutral." *Stubbs v. Gomez*, 189 F.3d 1099, 1105 (9th Cir. 1999) (quoting *Hernandez*, 500 U.S. at 360). For purposes of step two, the prosecutor's explanation need not be "persuasive, or even plausible." *Purkett v. Elem*, 514 U.S. at 765, 768 (1995). Indeed, "to accept a prosecutor's stated nonracial reasons, the court need not agree with them." *Kesser v. Cambra*, 465 F.3d 351, 359 (9th Cir. 2006).

/////

14

1    In the third step of a *Batson* challenge, the trial court has "the duty to determine whether

2  the defendant has established purposeful discrimination," *Batson*, 476 U.S. at 98, and, to that

3  end, must evaluate the "persuasiveness" of the prosecutor's proffered reasons.  *See Purkett*, 514

4  U.S. at 768.  In determining whether petitioner has carried this burden, the Supreme Court has

5  stated that "a court must undertake 'a sensitive inquiry into such circumstantial and direct

6  evidence of intent as may be available.'"  *Batson*, 476 U.S. at 93 (quoting *Arlington Heights v.*

7  *Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977)); *see also Hernandez*, 500 U.S. at 363.

8  "[A]ll of the circumstances that bear upon the issue of racial animosity must be consulted."

9  *Snyder v. Louisiana*, 552 U.S. 472, 478 (2008).  *See also Cook v. Lemarque*, 593 F.3d 810, 814

10  (9th Cir. 2010) (citation and internal quotation marks omitted) (stating the "totality of the

11  relevant facts" should be considered "to decide whether counsel's race-neutral explanation . . .

12  should be believed.").  In step three, the court "considers all the evidence to determine whether

13  the actual reason for the strike violated the defendant's equal protection rights."  *Yee v. Duncan*,

14  463 F.3d 893, 899 (9th Cir. 2006).

15    The defendant in the criminal prosecution bears the burden of persuasion to prove the

16  existence of unlawful discrimination.  *Batson*, 476 U.S. at 93.  "This burden of persuasion 'rests

17  with, and never shifts from, the opponent of the strike.'"  *Johnson*, 545 U.S. at 2417 (quoting

18  *Purkett*, 514 U.S. at 768).

19    "Any constitutional error in jury selection is structural and is not subject to harmless

20  error review."  *Williams v. Runnels*, 640 F. Supp. 2d 1203, 1210 (C.D. Cal. 2010) (citing

21  *Windham v. Merkle*, 163 F.3d 1092, 1096 (9th Cir. 1998) and *Turner v. Marshall*, 121 F.3d

22  1248, 1254 n.3 (9th Cir. 1997).  *See also Gray v. Mississippi*, 481 U.S. 648, 668 (1987) (stating

23  that among those constitutional rights so basic "that their infraction can never be treated as

24  harmless error" is a defendant's "right to an impartial adjudicator, be it judge or jury") (citation

25  and internal quotations omitted); *Williams v. Woodford*, 396 F.3d 1059, 1072 (9th Cir. 2005)

26  /////

15

1   ("because a *Batson* violation is structural error, actual harm is presumed to have resulted from

2   the alleged constitutional violation").

3        **2. <u>Analysis</u>**

4        As set forth above, in its decision on petitioner's *Batson* claim, the California Court of

5   Appeal agreed that the trial court did not correctly follow the *Batson* framework in denying

6   petitioner's *Batson* motion.  Specifically, the appellate court concluded that the trial judge should

7   have found a prima facie case of racial discrimination and asked the prosecutor to give his

8   reasons for challenging the four African American jurors, instead of bypassing *Batson*'s second

9   step and stating his own reasons for such a challenge.  Opinion at 12.  However, the appellate

10  court concluded that the trial court's errors were only "procedural" and that a review of the

11  entire record of voir dire did not show purposeful discrimination by the prosecutor in his

12  exercise of peremptory challenges.  *Id.* at 12-13.  In other words, while the California Court of

13  Appeal concluded that the trial court made mistakes in following *Batson*'s three part test, the

14  court found that petitioner had not met his ultimate burden to show that the prosecutor excused

15  the four African American jurors with discriminatory intent.

16       Petitioner, on the other hand, argues that because the prosecutor was not given the chance

17  by the trial court to state his reasons for striking all four African American jurors, step two was

18  never met.  He argues, essentially, that the trial court's failure to properly comply with step two

19  of the *Batson* test requires per se reversal of his conviction.[5]  This court disagrees.

20       In *Yee v. Duncan*, 463 F.3d 893 (9th Cir. 2006), the defendant raised a *Batson* challenge

21  after the prosecutor struck eight men from the jury panel.  The trial court found a prima facie

22  case and asked the prosecutor to explain her reasons for striking each male juror.  She was able

23  to articulate her reasons for striking seven of the jurors, but was unable to remember why she

24  ─────────────────

25      [5]  Because the trial judge explored the prosecutor's reasons for excusing the four African
     American jurors, essentially moving on to step two of the *Batson* analysis, any challenge to his
26  failure to find a prima facie case of racial discrimination is moot.

1    had struck one juror.  The district court granted petitioner's application for federal habeas relief,

2    concluding that the prosecutor's failure to give a reason for her strike, regardless of any other

3    evidence in the record, rendered the jury selection process a per se violation of the petitioner's

4    right to equal protection.  *Id.* at 899-900.  "The district court focused exclusively on the three-

5    step inquiry - particularly step two," and determined "that because the prosecutor forgot the

6    reason why she struck Juror #4, she never met her burden of providing a race-neutral reason for

7    her actions and that this failure alone mandated reversal."  *Id.* at 900.

8          The United States Court of Appeals for the Ninth Circuit disapproved this approach,

9    holding that petitioner did not meet his burden to show discriminatory purpose with regard to the

10   prosecutor's strike of the juror even though the prosecutor was unable to remember her reasons

11   for the strike.  The court reasoned that a failure by the prosecutor to explain his or her reasons at

12   *Batson*'s second step is not conclusive evidence of discrimination but simply "becomes evidence

13   that is added to the inference of discrimination raised by the prima facie showing."  *Id.* at 899.

14   The court explained that *Batson*'s second step was simply meant to "'refute the notion that a

15   prosecution [sic] could satisfy his burden of production by merely denying that he had a

16   discriminatory motive or by merely affirming his good faith.'"  *Id.* at 898 n.2 (citation omitted).

17   The court further explained that while it is improper to rely on speculation to provide a

18   prosecutor's actual reasons for a strike, the lack of an explanation by the prosecutor at step two

19   does not "prohibit[] the consideration of circumstantial evidence by the court when other

20   circumstances, such as forgetfulness, prevent the proponent of the strike from coming forward

21   with an explanation for the strike."  *Id.*  The Ninth Circuit held that by failing to reach step three

22   of the *Batson* analysis, the district court improperly "relieved [petitioner] of his 'ultimate burden

23   of persuasion.'"  *Id.* (citation omitted.)  It concluded that the California Court of Appeal's

24   treatment of step two "as a non-dispositive precursor to the ultimate determination at step three"

25   was reasonable.  *Id.* at 899.  In support of its decision on defendant's *Batson* claim, the Ninth

26   /////

1  Circuit in *Yee* relied on the decisions of the Eleventh and Fifth Circuits in *Bui v. Haley*, 321 F.3d

2  1304 (11th Cir. 2003) and *United States v. Forbes*, 816 F.2d 1006 (5th Cir. 1987).

3        In *Bui*, the Eleventh Circuit stated that "mere failure to explain every strike of black

4  jurors will not necessarily prevent a prosecutor from successfully rebutting a prima facie case of

5  race discrimination, where there is sufficient circumstantial evidence [in the record] from which

6  the court can deduce a race-neutral reason." *Bui*, 321 F.3d at 1317.  Accordingly, it was proper

7  in that case for the state Supreme Court to allow a trial judge to rely on "circumstantial evidence

8  to support an inference that a race-neutral reason underlies a particular strike, despite the lack of

9  any explicit race-neutral explanation from the State." *Id.*  Similarly, in *Forbes*,  1006, 1011 n.7

10 (5th Cir. 1987), the Fifth Circuit noted that "'[f]ailure by a prosecutor to explain every

11 peremptory strike of black jurors is not necessarily fatal to the prosecutor's ability to rebut a

12 prima facie case.'" *Forbes*, 816 F.2d 1011 n.7.  The cases cited above instruct that "a failure to

13 provide an explanation for exercising a strike does not relieve the trial court of its responsibility

14 to make the ultimate determination of whether there has been purposeful discrimination." *Yee*,

15 463 F.3d at 901.  *Accord Gonzalez v. Brown*, 585 F.3d 1202, 1208 n.4 (9th Cir. 2009) (a

16 prosecutor's failure to articulate a bona-fide reason for a peremptory strike at step two of the

17 *Batson* analysis is not a per se violation of *Batson* but instead the district court must consider "all

18 of the circumstances and the burden of showing discrimination that lies on the petitioner.");

19 *Williams*, 640 F. Supp. 2d at 1219 ("Thus, it appears the Supreme Court in *Johnson*

20 contemplated a requisite analysis at *Batson*'s third step regardless of whether the State proffered

21 any evidence at step two.").

22        This court concludes that the California Court of Appeal did not unreasonably determine

23 from the record facts that petitioner did not meet his ultimate burden of establishing that the

24 prosecutor in this case dismissed the four African American jurors with discriminatory motive.

25 This is true even though the trial judge suggested his own reasons why the prosecutor may have

26 exercised a peremptory challenge of these jurors.  The California Court of Appeal determined

that the prosecutor essentially agreed with and adopted the trial court's reasons for striking the four African American jurors. This determination is fairly supported by a reading of the relevant record. The prosecutor did not disagree with or express any disapproval of the judge's suggested reasons, but simply added several more of his own with respect to two of the jurors. Under these circumstances, it is reasonable to conclude that the trial judge's stated reasons were the actual reasons for the prosecutor's strike of the four jurors in question. Put another way, the prosecutor's real reasons for excluding these four jurors is not simply based on conjecture, but is demonstrated by his implied adoption of the trial court's statements. *See Castellanos v. Small*, No. CV 08-8177-JVS (DTB), 2012 WL 1432198 (C.D. Cal. April 25, 2012) (finding that the prosecutor agreed with the trial court's suggestion as to the basis for his challenge to a Hispanic juror).

All of the reasons expressed by the trial judge and adopted by the prosecutor, and those expressed by the prosecutor directly, were sufficient to demonstrate a reasonable race-neutral basis for the prosecutor's peremptory challenges of the four jurors. This court also notes that the trial judge's ruling on petitioner's *Batson* challenge demonstrates an implicit finding that the prosecutor was credible and his stated reasons genuine. *See Charles v. Felker*, 473 Fed. Appx. 541, 543 (9th Cir. 2012). Such "determinations of credibility and demeanor lie 'peculiarly within a trial judge's province.'" *Snyder*, 552 U.S. at 477.

Petitioner has not pointed to anything in the record of jury voir dire, and the court has found nothing, which demonstrates that the prosecutor kept any white jurors on the jury who shared similar characteristics with the stricken African American jurors. *See Crittenden v. Ayers*, 624 F.3d 943, 956 (9th Cir. 2010) (citations omitted) (noting that comparative juror analysis is one established tool at step three of the *Batson* analysis for determining whether facially race-neutral reasons are a pretext for discrimination). In addition, the prosecutor ultimately accepted a jury with two African-American members. It was reasonable for the state appellate court to conclude that, in light of the prosecutor's stated reasons for striking the four

1  African-American jurors and the other circumstantial evidence in this case, petitioner had failed

2  to establish purposeful discrimination, notwithstanding the trial court's failure to strictly follow

3  step two of the *Batson* test.  *See Gonzalez*, 585 F.3d at 1204 ("We hold that in view of the

4  relatively low number of peremptory challenges that the prosecutor exercised against

5  African-American jurors, the prosecutor's ability to justify her other peremptory challenges with

6  specificity and to the state court trial judge's satisfaction, as well as the fact that two

7  African-American jurors remained on the jury and a third was a prospective juror, we cannot say

8  that the California Court of Appeal's denial of Gonzalez's *Batson* claim was contrary to Supreme

9  Court precedent or an objectively unreasonable application of such precedents.").

10        The court also notes that the United States Supreme Court has not squarely addressed

11  "whether, when the prosecutor stands silent as to reason for one strike, but other circumstances -

12  such as valid reasons for other strikes and the overall composition of the jury - suggest the

13  absence of discrimination, the prosecutor's inability to respond at step two requires a

14  determination of violation of the rule of *Batson."  Gonzalez*, 585 F.3d at 1208.  In light of the

15  absence of any such decision by the United States Supreme Court, this court cannot conclude

16  that the California Court of Appeal unreasonably applied *Batson* when it denied petitioner's

17  claim.  This court would reach the same result under de novo review.  For the reasons set forth in

18  these findings and recommendations, the overall circumstances of this case do not support a

19  finding that the prosecutor acted with discriminatory purpose in striking the four African

20  American jurors.[6]

21  _____

22        [6] In state court, petitioner challenged the California Court of Appeal's finding that the
    trial court's errors in negotiating *Batson*'s three step procedure was "harmless," in light of the
23  pronouncement by the United States Supreme Court that *Batson* error is prejudicial per se.
    However, as explained above, the California Court of Appeal did not find that the prosecutor
24  committed *Batson* error.  Rather, it found that the trial court's procedural errors in denying
    petitioner's *Batson* motion did not compel reversal of petitioner's convictions where the record
25  as a whole did not support petitioner's claim of discrimination.  Reversal of a conviction is
    required only where the petitioner demonstrates a violation of the Equal Protection Clause in the
26  selection of the jury.  Petitioner has failed to do that here.

### III.  Conclusion

For all of the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).  In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case.  *See* Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

DATED:  August 5, 2013.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE